## BANK OF NEW ORLEANS AND TRUST COMPANY

### v.

### The OIL SCREW TRACY MARIE, its engines, tackle, apparel, etc., in rem, Delta Boat and Barge Rental, Inc., and Leroy A. Buras, Reuben Dupre, Jr. and Mrs. Martin P. Cannon, Individually.

#### Civ. A. No. 761021.

United States District Court,
W. D. Louisiana,
Lake Charles Division.

Feb. 13, 1978.

Affirmed, 5th Cir., 580 F.2d 808.

Robert T. Wakefield, Newman & Drolla, New Orleans, La., for plaintiffs.

Francis J. Barry, Jr., Deutsch, Kerrigan & Stiles, Harvey J. Lewis, Lawrence S. Kullman, Kierr, Gainsburgh, Benjamin, Fallon & Lewis, New Orleans, La., Daniel L. Morrow Gretna, La., Joseph E. LeBlanc, Jr., Milling, Benson, Woodward, Hillyer & Pierson, William L. Von Hoene, New Orleans, La., Evans & Sheffler, Gretna, La., for defendants.

## OPINION

VERON, District Judge.

The Bank of New Orleans and Trust Company (hereinafter referred to as BNO) commenced this action seeking to foreclose on its preferred ship mortgage as against the O/S Tracy Marie, owned and operated by Delta Boat & Barge Rental Co., Inc. (hereinafter referred to as Delta). Subsequently, Lee-Roy Towing Co. (hereinafter referred to as Lee-Roy) intervened asserting a maritime lien for wages it had advanced to members of the crew of the Tracy Marie for which it had not been reimbursed.

Jurisdiction in this matter is based on U.S.C.A. 28:1333.

The trial of the intervention was held on December 14, 1977. On the date of trial the parties stipulated that the amount of wages due Lee-Roy was $35,022.18. Therefore, the sole issue before the court is the determination of whether Lee-Roy's claim constitutes a valid lien priming the preferred ship mortgage held by the BNO.

The factual basis, out of which this claim arose, concerns the acquisition of insurance by the Tracy Marie owned by Delta, and

several other vessels, owned by other companies, operating through the same broker, East-West Towing Company. The evidence establishes that in 1975 these vessels were unable to obtain insurance. Pursuant to an agreement with an insurance carrier, arrangements were made for coverage for these vessels through Lee-Roy, which was organized for the purpose of serving as a holding company for the insurance. The stockholders of Lee-Roy were Leroy Buras, Marcus Smith, and Ray Adams. Leroy Buras was also a stockholder in the general agent and major broker East-West, and in the owner of Tracy Marie, Delta Boat. In the agreement, the insurance carrier required that Lee-Roy also advance wages to the various vessels' crew members. Pursuant to this plan, wages were advanced to the Tracy Marie, only part of which have been reimbursed.

Subsequent to the Bank's filing the present action asserting its preferred ship mortgage, this Court entered an Order for the Interlocutory Sale of the O/S Tracy Marie. Lee-Roy withdrew its objection to the confirmation of the sale of the Tracy Marie in exchange for the bank's agreement to pay its wage claim in the event the Court should find that it is valid and superior to the lien of the Bank.

Lee-Roy bases its claim on 46 U.S.C.A. § 971 which provides in pertinent part: "Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

█ The maritime lien established by this provision contains the presumption that any person making such advances is doing so on the credit of the ship, rather than on the credit of the owner. *The Englewood*, 57 F.2d 319 (1932, E.D.N.Y.).

█ The BNO argues that Lee-Roy is a "general agent" and is therefore not entitled to this presumption in light of the rule of admiralty that a "general agent" presumptively is relying on the credit of the owner rather than on the credit of the ship. *The M. Vivian Pierce*, 48 F.2d 644 (1931, D.C.Mass.). And to that extent the BNO further argues the non-existence of the lien due to Lee-Roy's failure to sustain its burden of proof. The Court does not accept BNO's characterization of Lee-Roy as a "general agent" and therefore finds it unnecessary to determine if it has met the attendant burden of proof in order to acquire a maritime lien. Instead the Court finds that, as a matter of law, Lee-Roy is a "special agent" and as a "special agent" is entitled to the presumption of § 971. Lee-Roy was formed *solely* for the purpose of acquiring insurance for a group of vessels with the ancillary task imposed by the insurance carrier of advancing wages to the crew members of those vessels.

Seaman's wages are given top priority as provided in 46 U.S.C.A. § 953(a):

When used hereinafter in this chapter, the term *"preferred maritime lien"* means (1) a lien arising prior in time to the recording and indorsement of a preferred mortgage in accordance with the provisions of this chapter; or (2) a lien for damages arising out of tort, for wages of a stevedore when employed directly by the owner, operator, master, ship's husband, or agent of the vessel, for wages of the crew of the vessel, for general average, and for salvage, including contract salvage. (Emphasis added)

█ It is well settled that one who advances money to pay crew's wages is entitled to a maritime lien of the same rank. *The Englewood*, supra. See also: *P. T. Perusahaan Pelay Sam. Trikora L. v. T. S. Salzachtal*, 373 F.Supp. 267 (1974, E.D.N. Y.); *Reconstruction Finance Corp. v. The William D. Mangold*, 99 F.Supp. 651 (1951, E.D.N.Y.).

█ Nonetheless, the BNO further argues that Lee-Roy is not entitled to recover because it allegedly lacks the right of action to bring this suit. The Court finds no merit

in this argument. While it is true that the formation of Lee-Roy was solely for the purpose of acquiring insurance, Lee-Roy, nonetheless, was under a legal obligation to pay taxes to the Internal Revenue Service relative to payroll tax deductions and to guarantee the payment of premiums of the insurance carrier. Certainly for these reasons, Lee-Roy had a real interest in recovering the unreimbursed wages.

For the foregoing reasons, judgment is rendered in favor of Lee-Roy Towing Company and against the defendant, Bank of New Orleans and Trust Company, in the amount of $35,022.18 plus costs.